UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KELVIT BURGESS,  
               Plaintiff,

v.

KATHLEEN GERBING; P. EARLY; A. SMITH-
ROBERTS; MS. L. HURD; BRANDON SMITH;
MS. M. HAMMOND; DR. D. SMITH; NURSE
ADMIN. KAREN COLE; and MAXINE FORBES
GOULDING, in her capacity as the representative
of Dr. Herbert E. Goulding's Estate;
               Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

15 CV 9256 (VB)

Briccetti, J.:

      Plaintiff Kelvit Burgess, a former inmate proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq., claiming (as relevant to the pending motion) that defendants Brandon Smith, Superintendent of Greene Correctional Facility ("Greene"); M. Hammond, Deputy Superintendent at Greene; Karen Cole, Nurse Administrator at Greene; and Dr. D. Smith, plaintiff's physician at Greene (collectively, the "Greene Defendants"), violated plaintiff's rights under the Eighth Amendment and discriminated against him in violation of the ADA.

      Now pending is the Greene Defendants' motion to dismiss the amended complaint, or, in the alternative, to sever and transfer the remaining claims against them to the United States District Court for the Northern District of New York. (Doc. #71).

      The Greene Defendants' motion to dismiss is GRANTED as to plaintiff's Eighth Amendment claim regarding unsafe showers against Deputy Superintendent Hammond; plaintiff's Eighth Amendment claim regarding inadequate medical care against Nurse Cole; plaintiff's Eighth Amendment claims regarding the orthopedist referral and improper

1

documentation of his medical conditions against Dr. Smith; and plaintiff's ADA discrimination claim regarding busing at Greene against all the Greene Defendants.

The Greene Defendants' motion to dismiss is DENIED as to plaintiff's unsafe showers claim against Superintendent Smith, Nurse Cole, and Dr. Smith; and as to the inadequate medical care claim against Dr. Smith for refusing to provide plaintiff his knee and back braces.

The Greene Defendants' motion to sever and transfer is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

I.  Procedural History

On November 11, 2016, the Court granted a motion to dismiss (Doc. #32), as to plaintiff's Eighth Amendment conditions of confinement claim, the ADA retaliation claim, and the ADA discrimination claim related to busing at Greene, and denied the motion with respect to plaintiff's other claims. Burgess v. Superintendent of Otisville Corr. Facility, 2016 WL 6875895, at *6 (S.D.N.Y. Nov. 21, 2016).[1]

The Court granted plaintiff leave to amend his complaint with respect to his conditions of confinement claim regarding allegedly unsafe showers at Greene and the ADA discrimination claim regarding busing, both of which are brought against the Greene Defendants. The Court permitted plaintiff to include in his amended complaint a claim of deliberate indifference based on allegations that Dr. Smith and Nurse Cole confiscated and failed to re-issue plaintiff knee and back braces, improperly documented his medical condition, and failed to send him to an orthopedist. Burgess v. Superintendent of Otisville Corr. Facility, 2016 WL 6875895, at *6.

---

[1] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

II.　　　Factual History

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint, the amended complaint, and plaintiff's other submissions, including plaintiff's brief in opposition to the pending motion, and draws all reasonable inferences in plaintiff's favor.[2]

Plaintiff was an inmate in various New York state correctional facilities beginning in 2007. He suffers from Blount's Disease, which was treated with surgical implementation of staples in his knee. Plaintiff also suffers from arthritis and asthma. These conditions cause pain, limit plaintiff's ability to walk, and require him to use a cane. As a part of his treatment for these conditions, plaintiff was prescribed knee and back braces.

On September 3, 2015, plaintiff arrived at Greene. On September 4, plaintiff reported to sick call to request knee and back braces. His request was refused, but he was given an appointment to be seen by a doctor. On September 7, he filed a grievance regarding the layout of Greene because programs and services were provided at a location too far away for plaintiff to access by walking and busing was not provided, and because the absence of handrails in the showers made it difficult and unsafe for plaintiff to bathe. Following Nurse Cole's recommendation, non-party Superintendent Steinbach denied plaintiff's grievance. Superintendent Smith affirmed the denial on appeal, citing his investigation with Nurse Cole.

On September 22, 2015, plaintiff complained to Dr. Smith regarding knee and back pain, and requested that handrails be installed in the showers, because plaintiff feared he might fall and injure himself. Dr. Smith denied this grievance, which Superintendent Smith affirmed on appeal. Following x-rays of plaintiff's knees taken on October 23, Dr. Smith gave plaintiff a leg sleeve that she felt would aid his "mild and moderate" condition.

---

[2]　Factual allegations regarding claims not subject to the present motion are not included herein.

3

On November 20, 2015, plaintiff fell in the shower when his cane slipped on the wet floor, and he suffered injuries to his back, hand, and knee. On November 22, plaintiff told Dr. Smith about his fall and injuries. Plaintiff again requested his knee brace, but Dr. Smith refused that request. On December 24, plaintiff again requested that handrails be installed, which Dr. Smith denied.

From September 9 through December 24, 2015, plaintiff filed multiple grievances complaining he was excluded from programing and busing because of his disability. The programs plaintiff wished to attend were located on the far side of the facility, and plaintiff's physical limitations prevented him from accessing them by foot. Although Greene had a busing system available for Greene staff and corrections officers, inmates were not permitted to use the buses. Plaintiff submitted a request to amend Greene's busing practices to accommodate the disabled. Deputy Hammond denied this request, a decision with which Superintendent Smith, Dr. Smith, and Nurse Cole agreed.

Plaintiff also filed requests with Nurse Cole for handrails, to see an orthopedist, and to be provided braces, all of which Nurse Cole denied. Plaintiff further alleges Nurse Cole did not review his medical records or examine him in making these decisions.

## DISCUSSION

I.  Motion to Dismiss

The Greene Defendants move to dismiss plaintiff's Eighth Amendment unsafe showers claim, plaintiff's Eighth Amendment claims regarding medical care, and plaintiff's ADA busing discrimination claim.

4

A.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d

162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

B. Eighth Amendment Claims

Plaintiff asserts two distinct Eighth Amendment claims: (i) unconstitutional conditions of confinement due to unsafe showers, and (ii) deliberate indifference to plaintiff's serious medical needs. The Court addresses each claim separately.

1. Unsafe Showers

Plaintiff claims the conditions of his confinement at Greene violated his Eighth Amendment rights because the showers at Greene do not contain handrails, which plaintiff required because of his physical limitations. Plaintiff alleges the absence of handrails caused him to fall and injure himself, and prevented him from bathing.

To state an Eighth Amendment conditions of confinement claim, a plaintiff must allege: "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and alteration omitted). Moreover, plaintiff must allege each defendant's personal involvement in the violation to state a claim against that defendant. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).

Regarding the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d at 125. He must allege prison officials deprived him "of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." Id. (internal

quotation marks omitted). When a plaintiff seeks to combine individual deprivations, the sum equates a conditions of confinement claim only if the composite conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." Wilson v. Seiter, 501 U.S. 294, 304 (1991). As the Court previously held, the absence of handrails in showers creates a sufficiently serious safety risk, at least for inmates who are disabled. Burgess v. Superintendent of Otisville Corr. Facility, 2016 WL 6875895, at *3 (S.D.N.Y. Nov. 21, 2016). Moreover, the amended complaint alleges plaintiff was unable to shower because of the lack of handrails. Thus, plaintiff's claim is that the absence of handrails in the showers required him either to abstain from showering or to undertake a substantial risk of serious physical harm, which is sufficient to satisfy the objective requirement. See Montalvo v. Koehler, 1992 WL 396220, at *4 (S.D.N.Y. Dec. 21, 1992).

With respect to the subjective requirement:

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This "deliberate indifference" element is equivalent to the familiar standard of "recklessness" as used in criminal law.

Phelps v. Kapnolas, 308 F.3d 180, 185–86 (2d Cir. 2002) (citation omitted).

Nurse Cole, Dr. Smith, and Deputy Hammond each argue plaintiff fails to allege they satisfy the subjective requirement.

Plaintiff sufficiently alleges Nurse Cole was aware plaintiff was required to risk substantial bodily injury to bathe himself. Plaintiff informed Nurse Cole of his inability to bathe safely because of his medical conditions, and he repeatedly directed requests to her that handrails

be installed in the shower.  Thus, plaintiff's allegations regarding Nurse Cole satisfy the subjective requirement.

Similarly, plaintiff alleges he informed Dr. Smith of his various physical conditions and his need for handrails in the showers.  Plaintiff alleges he requested Dr. Smith have handrails installed in the showers, both before and after his fall.  Plaintiff informed Dr. Smith that he feared falling in the shower due to his limitation and that his cane slips on the wet floor.

Dr. Smith argues plaintiff's allegation that she characterized his condition as an "old injury" of "[m]ild or [m]oderate" severity undermines his allegation she was aware of the facts of his disability and risks.  (Am. Compl. ¶¶ 62, 64).  But plaintiff alleges Dr. Smith intentionally misrepresented plaintiff's injuries to downplay their severity, implying Dr. Smith was aware these statements were false.  This finding is supported by plaintiff's many allegations that he explained the severity of his conditions to Dr. Smith.  Thus, liberally construed, plaintiff's allegations regarding Dr. Smith satisfy the subjective requirement.

However, the claim against Deputy Hammond for not providing handrails in the showers fails to satisfy the subjective requirement.  Plaintiff fails to allege facts showing Deputy Hammond had any information about plaintiff, his medical conditions, or the danger posed by lack of handrails prior to his November 20, 2015, fall.  Thus, Deputy Hammond did not have the requisite information to know of and disregard any risk to plaintiff's health or safety, at the time of plaintiff's complained-of injury.  See, e.g., Carr v. Canty, 2012 WL 3578742, at *2 (S.D.N.Y. Aug. 16, 2012) (plaintiff fails to state a claim when he alleges defendants learned of the relevant underlying facts only after plaintiff suffered injury).  Therefore, the Eighth Amendment claim based on the lack of handrails in the showers against Deputy Hammond must be dismissed.

As explained, plaintiff must allege a defendant was personally involved in the violation to state a claim against that defendant. Farrell v. Burke, 449 F.3d at 484. When plaintiff seeks to impose liability on a defendant who acted in a supervisory position, he must allege:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d. Cir. 1995) (emphases omitted)).[3]

Nurse Cole and Superintendent Smith argue plaintiff failed to allege their personal involvement in his alleged Eighth Amendment violation.

Nurse Cole argues that she was not personally involved in the alleged Eighth Amendment violation because supervisory liability does not exist for participating in the denial of grievances, citing Ramrattan v. Fischer, 2015 WL 3604242, at *10 (S.D.N.Y. June 9, 2015).

Even assuming Nurse Cole acted only in a supervisory capacity—an issue she does not address—she was personally involved in that "after being informed of the violation through a report or appeal, [she] failed to remedy the wrong," and she "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Grullon v. City of New Haven, 720 F.3d at 139. Plaintiff alleges he repeatedly complained to Nurse Cole, informed her of his conditions and his inability to shower safely, but

---

[3] After Ashcroft v. Iqbal, however, district courts within this circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases). The Second Circuit has yet to resolve this dispute. Id.

9

she nevertheless denied plaintiff's grievance and otherwise failed to take corrective action. Moreover, to the extent other courts have imposed a higher standard in the context of acts regarding inmate grievances, see, e.g., Ramrattan v. Fischer, 2015 WL 3604242, at *10 ("Only where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint) can the supervisor be held personally involved for Section 1983 purposes." (quoting Vann v. Fischer, 2014 WL 4188077, at *7 (S.D.N.Y. Aug. 25, 2014)), plaintiff's allegations are sufficient. Plaintiff alleges Nurse Cole personally reviewed and denied multiple grievances regarding plaintiff's difficulties bathing.

Similarly, Superintendent Smith argues that he was not personally involved in plaintiff's alleged constitutional violation.

First, Superintendent Smith argues he cannot be held liable for any constitutional violation merely because of his supervisory role. Although true, this argument misunderstands plaintiff's allegations. Plaintiff does not allege Superintendent Smith acted only in a supervisory capacity. Plaintiff alleges Superintendent Smith personally denied his grievance after conducting an investigation.

Second, Superintendent Smith argues that denying a grievance, without more, is insufficient personal involvement, citing three decisions from this District. But, as stated above, the Second Circuit has held that personal involvement exists when "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong." Grullon v. City of New Haven, 720 F.3d 139. Here, plaintiff alleges Superintendent Smith not only denied two of plaintiff's appeals, but also conducted an investigation.

Accordingly, the unsafe showers claim against Deputy Hammond is dismissed, but the claims against Nurse Cole, Dr. Smith, and Superintendent Smith remain.

10

2. <u>Serious Medical Needs</u>

Plaintiff asserts an Eighth Amendment claim for deliberate indifference to his serious medical needs against Nurse Cole and Dr. Smith for failing to refer plaintiff to an orthopedist, for failing to provide plaintiff with his prescribed knee and back braces, and for inappropriately documenting his medical conditions.

To state an inadequate medical care claim under the Eighth Amendment, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: plaintiff must plead facts showing (i) the alleged deprivation of medical care is "sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. <u>Salahuddin v. Goord</u>, 467 F.3d at 279 (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 839–40 (1970)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." <u>Salahuddin v. Goord</u>, 467 F.3d at 280 (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 32–33 (1993)).

In determining whether an alleged injury is a "serious" medical condition, "factors that have been considered include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) (quoting <u>McGuckin</u>

11

v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). In cases challenging the adequacy of the medical treatment given, "the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

The subjective component requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[T]he charged official must act with a sufficiently culpable state of mind." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 300 (1991)). It is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d at 703. "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Id. "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Issues as to the proper course to diagnose and treat an inmate "implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment," id., at least when there is no allegation of "an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" Chance v. Armstrong, 143 F.3d at 703 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).

Nurse Cole argues plaintiff's allegations fail to satisfy the subjective requirement.

Unlike plaintiff's unsafe showers claim where he alleges he repeatedly informed Nurse Cole he could not shower safely, plaintiff fails to allege Nurse Cole had a sufficiently culpable state of mind regarding this claim. Plaintiff does not allege facts establishing Nurse Cole was personally aware of plaintiff's need or prescription for knee and back braces, his need for an orthopedist, or the need to correct his medical records. At most, plaintiff's allegations amount to nothing more than a disagreement over appropriate medical treatment, which plainly is insufficient to state a constitutional claim. See, e.g., Chance v. Armstrong, 143 F.3d at 703. Thus, plaintiff fails to state a deliberate indifference claim against Nurse Cole.

Dr. Smith argues his decision not to provide plaintiff with his prescribed knee and back braces is a medical judgment, and therefore plaintiff's disagreement is insufficient to state a claim for the denial of adequate medical care.

The Court disagrees.

Dr. Smith's argument ignores plaintiff's allegation that Dr. Smith's refusal was not based on a disagreement of medical judgment, but rather based on Greene polices. That is, plaintiff alleges Dr. Smith denied plaintiff's prescribed braces because Greene policy prohibited them, not because of her medical judgment that such braces were unnecessary. "In other words, this case does not involve a disagreement among physicians exercising their medical judgments as to the appropriate course of treatment of a prisoner." Johnson v. Wright, 234 F. Supp. 2d 352, 362 (S.D.N.Y. 2002).

However, plaintiff's claims regarding improper documentation and refusal to refer plaintiff to an orthopedist must be dismissed. These are merely disagreements over appropriate

care based on medical judgment, which do not give rise to an Eighth Amendment claim. See

Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d at 311.

Accordingly, the deliberate indifference claim against Nurse Cole is dismissed, along with the deliberate indifference claims against Dr. Smith regarding an orthopedist referral and improper documentation. However, the deliberate indifference claim against Dr. Smith regarding refusal to provide prescribed knee and back braces remains.

C. ADA Claim

Plaintiff claims the Greene Defendants violated the ADA by refusing to allow him to use the buses at Greene.[4]

To state a discrimination claim under the ADA, plaintiff must allege he was treated differently than non-disabled inmates. See Maccharulo v. N.Y. State Dep't of Corr. Servs., 2010 WL 2899751, at *5 (S.D.N.Y. July 21, 2010). In the November 21, 2016, Amended Opinion and Order, the Court granted plaintiff leave to amend his complaint to clarify "whether plaintiff alleges bus service was offered to non-disabled inmates, or only the Greene staff and officers." Burgess v. Superintendent of Otisville Corr. Facility, 2016 WL 6875895, at *5 (S.D.N.Y. Nov. 21, 2016).

In his amended complaint, plaintiff alleges he was denied access to "the [b]us service that Greene offers to its staff and corrections officers." (Am. Compl. ¶ 78). Although bus services for inmates are provided at other correctional facilities, no Greene inmates are granted access to the system. Thus, plaintiff fails to state a claim, because he does not allege he was treated

---

[4] In both his original and amended complaints, plaintiff asserts an ADA discrimination claim regarding his exclusion from programs and services because of his disabilities. The Greene Defendants did not address this claim in the pending or prior motions to dismiss. Accordingly, the Court need not address the viability of that claim here.

differently than non-disabled inmates. See Elbert v. N.Y. State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).

Accordingly, the ADA discrimination claim regarding busing at Greene is dismissed.

D.     Qualified Immunity

The Greene Defendants argue they are entitled to qualified immunity as to plaintiff's remaining Eighth Amendment claims. In deciding whether a defendant is entitled to qualified immunity, the Court must examine:

> (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was "clearly established"; and (3) even if the right was "clearly established," whether it was "objectively reasonable for the officer to believe the conduct at issue was lawful.

Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013).

The Greene Defendants argue they are entitled to qualified immunity because (i) plaintiff failed to allege a violation of his Eighth Amendment rights and (ii) any Eighth Amendment right was not clearly established.

For the reasons already stated, plaintiff stated claims for violations of his Eighth Amendment rights.

In determining whether a right was clearly established at the time of the alleged violation, the Count considers the following factors:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

After discovery, and based on a more complete record, the Court may well decide it was objectively reasonable under all the relevant circumstances for defendants to believe they were

not violating plaintiff's Eighth Amendment rights to safe shower conditions and adequate medical care.

The Court will defer, until then, the question of whether defendants are entitled to qualified immunity.

II.     Motion to Sever and Transfer

The Greene Defendants move, in the alternative to dismissal, to sever the remaining claims against them and transfer the claims to the United States District Court for the Northern District of New York under 28 U.S.C. § 1404(a).[5]

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

A motion to transfer venue first requires the Court to decide whether the case could have been brought in the transferee district. Glass v. S & M NuTec, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006). "[A]n action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004); see also 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 111.12[1][a] (3d ed. 2010) (explaining the requirements for whether the transferee court is one in which the action "might have been brought").

---

[5] The Greene Defendants focus their argument solely on the issue of transfer, and completely neglect the issues regarding severance; e.g., the Court's authority to sever the claims and why the Court should sever the claims, even if it has the authority. Because Court would not transfer the claims against the Greene Defendants even if properly severed, it need not address severance.

16

Subject matter jurisdiction would have existed in the Northern District based on federal question jurisdiction under 28 U.S.C. § 1331 for the same reasons it exists here. Personal jurisdiction would have existed in the Northern District over the Greene Defendants because plaintiff's claims against them are based on their actions in New York. See, e.g., Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (A court may properly exercise specific personal jurisdiction when there is a relationship between the forum and the controversy, such as when an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."). Finally, venue would have been proper because the underlying events occurred in Coxsackie, New York, which is in the Northern District, and thus "a substantial part of the events [and] omissions giving rise to the claim[s] occurred there." 28 U.S.C. § 1391(b)(2). Therefore, this action could have been brought in the Northern District.

If the case could have been brought in the transferee district, as here, the Court must next decide whether transfer is warranted based on the following:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Glass v. S & M NuTec, 456 F. Supp. 2d at 501; see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). A district court has broad discretion to balance these factors and to consider the evidence of convenience and fairness on a case-by-case basis to protect litigants and prevent the waste of time, energy, and resources. See Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989). The moving party has the burden of justifying transfer of venue as

17

plaintiff's choice of forum should control absent a "strong case for transfer." Filmline (Cross-Country) Productions, Inc. v. United Artists Corp., 865 F.2d at 521.

Although the claims against the Greene Defendants could have been brought in the Northern District, the Court does not find that the convenience of the parties and the interests of justice would be served by transferring those claims.

The Greene Defendants argue the convenience of the parties and non-party witnesses justifies transfer because the defendants work and plaintiff is incarcerated at Greene in the Northern District, where relevant evidence is located.

The Court disagrees.

The Greene Defendants incorrectly argue "[t]he convenience of the parties and non-party witnesses is generally viewed as the most important factor," citing American Eagle Outfitters, Inc. v. Tala Brothers Corp., 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006). (Def.'s Br. at 22). But that authority does not support this statement of law. In American Eagle Outfitters, the court granted this factor no special weight and found it to be a neutral consideration. Id. at 477–80. Indeed, the court stated that a plaintiff's "choice of forum is generally entitled to deference. 'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Id. at 479 (quoting Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)). The court then found that the choice of forum weighed strongly in favor of denying defendants' motion to transfer. Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d at 479.

That parties, witnesses, and evidence exist at Greene, in Coxsackie, New York, is not a sufficiently weighty consideration to disturb plaintiff's legitimate choice of forum here. In short, defendants have not carried their burden to show that transfer to the Northern District is justified.

18

## CONCLUSION

The Greene Defendants' motion to dismiss is GRANTED as to plaintiff's Eighth Amendment claim regarding unsafe showers against Deputy Superintendent Hammond; plaintiff's Eighth Amendment claim regarding inadequate medical care against Nurse Cole; plaintiff's Eighth Amendment claims regarding the orthopedist referral and improper documentation of his medical conditions against Dr. Smith; and plaintiff's ADA discrimination claim regarding busing at Greene against all the Greene Defendants.

The Greene Defendants' motion to dismiss is DENIED as to plaintiff's unsafe showers claim against Superintendent Smith, Nurse Cole, and Dr. Smith; and as to the inadequate medical care claim against Dr. Smith for refusing to provide plaintiff his knee and back braces.

The Greene Defendants' motion to sever and transfer is DENIED.

By July 26, 2017, the Greene Defendants shall file an answer to the amended complaint.

The Clerk is instructed to terminate the motion. (Doc. #71).

The Clerk is further instructed to mail a copy of this order to plaintiff.

**Plaintiff and counsel for defendants shall attend the previously-scheduled case management conference on September 6, 2017, at 10:30 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 620, White Plains, New York, at which time the Court will consider all case management matters and issue a revised Civil Case Discovery Plan and Scheduling Order.**

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v United States, 369 U.S. 438, 444-45 (1962).

Dated: July 12, 2017
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge